RUDOLPH H. FITZ et al.

*v.*

THE MINNESOTA CENTRAL RAILWAY COMPANY.

The Legislature, by an act approved March 10th, 1862, entitled "An act to facilitate the construction of the Minneapolis and Cedar Valley Railroad, and to amend and continue certain acts in relation thereto," did not revive the Minneapolis and Cedar Valley Railroad Company, or continue or re-grant to it the franchises and property which it had forfeited to the State.

Appeal from the District Court for Ramsey county. The plaintiffs sought in this action to recover the amount of a judgment of the District Court for said county, in their favor,

against The Minneapolis and Cedar Valley Railroad Company: They alleged in their complaint, in substance, among other things, that the defendant was a corporation originally created and organized under the name of The Minneapolis and Cedar Valley Railroad Company; that said corporation was revived and continued under the corporate name of The Minneapolis, Fairbault and Cedar Valley Railroad Company, by virtue of an act of the Legislature of the State of Minnesota, entitled "An act to facilitate the construction of the Minneapolis and Cedar Valley Railroad, and to amend and continue certain acts in relation thereto," approved March 10, 1862; that by an amendment to the last mentioned act, approved February 1, 1864, the corporate name of said company was changed to The Minnesota Central Railway Company.

The defendant demurred to the complaint, specifying the following, among other grounds of demurrer:

"It does not appear in and by said complaint that the defendant is the same party or corporation as The Minneapolis and Cedar Valley Railroad Company, against whom the alleged judgment therein mentioned was recovered, but it appears from said complaint, and the acts therein mentioned and referred to, that defendant is an entirely different and distinct corporation, and not in any manner liable for the debts and obligations of the said Minneapolis and Cedar Valley Railroad Company."

The demurrer was sustained by the court. The plaintiffs appeal from the order sustaining the same to this court.

SMITH & GILMAN, for appellants.

F. R. E. CORNELL, for respondent.

*By the Court*—WILSON, CH. J.—The sole question in this case is, whether the Legislature, by an act approved March 10, 1862, entitled "An act to facilitate the construction of the

Minneapolis and Cedar Valley Railroad, and to amend and continue certain acts in relation thereto," (Laws 1862, p. 226) intended to and did revive the Minneapolis and Cedar Valley Railroad Company, and continue and re-grant to it the franchises and property which it had forfeited to the State. The first four sections of said act read as follows:

SEC. 1. That all the rights, benefits, privileges, property, franchises and interests of the Minneapolis and Cedar Valley Railroad Company, acquired by the State of Minnesota, * * be and the same are hereby continued, granted and transferred to Alexander Chambers, Sylvester Smith, William H. Dike, Charles A. Wheaton, Franklin Steele, Henry Chaffee, Thomas A. Harrison, Eli B. Ames, John M. Gilman, William G. Le Duc and Rufus J. Baldwin, for the purposes and on the terms and conditions hereinafter in this act provided, free and clear of all liens or claims thereon by or to the State of Minnesota, and free and clear from any and all claims or liens whatever thereon, except as herein provided.

SEC. 2. All the rights, privileges, franchises, lands, property and interests heretofore granted by the Territory of Minnesota to the Minneapolis and Cedar Valley Railroad Company by the two several acts of the Legislature of said Territory, entitled, * * * are hereby continued and granted to and vested in the said Alexander Chambers, Sylvester Smith, Wm. H. Dike, Charles A. Wheaton, Franklin Steele, Henry Chaffee, Thomas A. Harrison, Eli B. Ames, John M. Gilman, William G. Le Duc and Rufus J. Baldwin, and their associates and successors, with all the immunities, rights, property, benefits and privileges which the said Minneapolis and Cedar Valley Railroad Company had or might or could have by reason of the passage of said acts, or either or both of them, free and clear of all liens or claims of the State of Minnesota thereto, except such as are retained to the said State in or by said acts, or by the provisions of this act, and the said persons herein named and their associates and

successors, shall hereafter be known as the Minneapolis, Faribault and Cedar Valley Railroad Company, and that the persons hereinbefore. referred to and hereinbefore named, shall be directors of said company for one year and until others are elected and appointed in their place. * * For the purpose of carrying out and effecting the objects of this act, the said Minneapolis, Faribault and Cedar Valley Railroad Company, and their successors and assigns, shall have and be possessed of all the powers, immunities, rights, franchises and privileges contained in and provided for in said two acts referred to in Sec. 2 of this act, and be subject to all the conditions and provisions of said acts, excepting as altered and changed by this act. * * *

Sec. 3. *And be it further enacted,* That, for the purpose of quieting any outstanding claims, the Minneapolis and Cedar Valley Railroad Company is hereby authorized to release to the persons hereinbefore mentioned, and their associates, or upon their default to comply with the provisions of this act, to such other persons and their associates, or to such other company as may comply with the provisions of this act, any right or title which it may claim to have in and to all the rights, privileges, franchises, right of way, road beds, depot grounds, culverts, bridges, turn-outs, and property of every character and kind, belonging to, or in any manner appertaining to, said line of railroad; and such persons to whom such release shall be executed, are hereby authorized and empowered to reorganize under the original charter of said Minneapolis and Cedar Valley Railroad Company, and under the name of the Minneapolis, Faribault, and Cedar Valley Railroad Company; which said company, so reorganized, shall have all the powers, privileges, franchises, rights, and immunities of every character and kind, which were possessed by the said Minneapolis and Cedar Valley Railroad Company; *provided,* that nothing in this act contained shall be construed as impairing the validity of the foreclosure and

vol. xi.—27

sale of the rights, properties and franchises of said company on behalf of the State, on the 16th day of August, 1860, or as recognizing, in any manner, any title to such rights, properties and franchises in such Minneapolis and Cedar Valley Railroad Company; *and provided further*, that the acceptance of the grants in this act contained, shall be deemed a waiver of all errors and irregularities, if any, in such foreclosure and sale by said Minneapolis, Faribault and Cedar Valley Railroad Company, or any other persons or coporations taking under the provisions of this act, as against the State of Minnesota.

SECTION 4. *And be it further enacted,* That if it should be deemed advisable by the parties herein named, to correct any defects in the foreclosure and sale of said Minneapolis and Cedar Valley Railroad Company, made by the trustees of the first mortgage bond holders, on the 16th day of July, 1860, that William R. Marshal and John G. Forbes, who are the trustees of the first mortgage bond holders of the Minneapolis and Cedar Valley Railroad Company, are hereby authorized and empowered to forclose and sell said Minneapolis and Cedar Valley Railroad, in accordance with the provisions of the trust deed, together with all the privileges, immunities, right of way, road bed, and all the property of said Minneapolis and Cedar Valley Railroad Company, which it had or has, if any     *     *     *     and upon the sale of the same the purchaser or purchasers and their associates shall have the right to reorganize under said charter of said Minneapolis and Cedar Valley Railroad Company, and have and use and exercise all the powers, privileges, rights and franchises of said original company, and shall have power to construct and complete said railroad and its branch road to St. Paul and Hastings, as provided in the charter of the Minneapolis and Cedar Valley Railroad Company, and the act entitled, 'An Act to execute the trust created by an act of Congress.'   *   *

There is neither ambiguity nor absurdity patent in this act, requiring or justifying a resort to construction. Passing by, for the present, the position of the plaintiff that the Legislature had not, at the time of the passage of the act, power under the Constitution to create a new corporation, and there is not the least ground for the argument that the defendant and the Minneapolis and Cedar Valley Railroad Company are one and the same corporation. The language, read according to its ordinary and obvious meaning, shows a transfer to the defendant of the rights and franchises which had formerly belonged to said Minneapolis and Cedar Valley Railroad Company.

The plaintiff's counsel does not doubt but that this is the true meaning of the words of the statute, but he insists that it is not their only meaning. It is a well settled rule of statutory construction, that when we have discovered one true sense of the words, which is their obvious and natural sense, we cannot properly seek for, or apply to them, any other, and this is especially true where the meaning claimed can only be drawn from the words by a forced and unnatural construction. *McCluskey v. Cromwell*, 1 Kern. 653.

This statute partakes of the nature of a contract, or agreement, and therefore, its construction ought to be close, the presumption being that its terms are fully and intelligently expressed. It is not reasonable to suppose that if the Legislature intended to revive the old corporation, subject to all its debts and liabilities, that that intention could only be gathered from the act by a forced construction, unsupported by the language of a single section. The nature of the act, being a contract between the State and the defendant, the great pecuniary interest involved, and the importance of such provision to the State, to the old company, to the defendant, and to private individuals, forbid such supposition.

The affirmative provisions of the statute also point unerringly to the same conclusion. At the time of the passage of the

act in question, the State had, or claimed to have, acquired
(by the foreclosure and forfeiture of the Minneapolis and Cedar
Valley Railroad Company,) all the rights, property, and fran-
chises of said M. & C. V. R. R. Company.

The only ground on which the plaintiffs claim the right to
recover is, that the defendant is the old corporation revived by
said act, (under a new name,) subject to all its debts and lia-
bilities.  Either the language of the statute means that the
defendant is not liable for any debts of the old company, or it
is, as to such liability, meaningless or inoperative; for to
free the property and franchises of the company from the
claims and liens against them, leaving the company subject to
its debts, and its property and franchises therefore subject to
levy and sale for such debts, would be idle, and if the Legis-
lature had not the power to absolve the old company from its
ordinary debts and liabilities, it clearly had not to free its
property from all claims or liens thereon, each being equally
forbidden by that clause of the constitution which declares
that no law shall be passed impairing the obligation of con-
tracts.   We are not at liberty to presume, unless the language
of the statute clearly leads to such conclusion, that the Legis-
lature acted in ignorance or disregard of this inhibition of the
constitution, and this presumption is inevitable, if we hold
the defendant identical with the old company.  If the act of
1862 revived the old corporation, it revived it with all its
rights, privileges, property and franchises, and no such pro-
vision as is found in section 2, was necessary "for the purpose
of carrying out and effecting the objects of the act."   The
provisions of section 3 are also meaningless, if the act was
intended to operate as a revival of the old company.   A pro-
position that the company should release to *itself*, and that
such release should be made for the purpose of quieting out-
standing claims made by that company, is too absurd to per-
mit us for a moment to suppose that it was intended by the
Legislature, and when we bear in mind that the Minneapolis

and Cedar Valley Railroad Company, was the mortgagor of the property and franchises transferred by the act, owning what the State had not acquired, it is apparent that the validity of the foreclosure was quite immaterial, if said company was the grantee of the State, and the provisions of sections 3 and 4, as to the validity of such foreclosure, the waiving of errors and correcting of defects therein, are wholly unnecessary. A construction unauthorized by the plain and obvious meaning of the language of the statute, and which leads to such consequences, cannot have been intended by the Legislature.

The plaintiff's counsel argues that the identity of the franchises is proof of the identity of the corporation, but this cannot be admitted. The Legislature had the right to convey the property and franchises which had been forfeited to, or acquired by, the State, to either the old company or a different one.

The State recognized no claim on the part of the old company, either legal or equitable, to such property and franchises, and there was no presumption that the State would assign to it, in preference to a different company. The possession of the franchises, therefore, by transfer from the State, does not furnish the least evidence that the possessor is identical with the old corporation. The plaintiff attaches great significance to the use of the words "*continued*" in the first and second sections of the act, and "*reorganize*" in the third section; arguing that the use of the former shows an intention to *continue* the franchises in the old, rather than to grant them to a different company, and that the use of the latter shows that a previous organization existed, and arguing that this was the Minneapolis and Cedar Valley Railroad Company. We do not think that this is the natural or true meaning of the words as used in this act. Franchises are created and given by the State, and when forfeited, they revert to it. When thus forfeited, the State may either *continue* and keep them alive, or

may permit them to merge, and thus become extinguished. In this case it determined to *continue* and re-grant the forfeited franchises, and the use of said word in the statute, we think, has no other signification than this. With reference to the word "*reorganize*," it will be observed that the persons to whom the release was to be made, and who are authorized to "*reorganize*" under the original charter, were the persons in the first and second sections of the act named, "or upon their default to comply with the provisions of the act, such other persons and their associates, or such other company," as should comply with the provisions of the act. Now there is not the least evidence, nor is it intimated in the argument, that the persons thus referred to, were ever in an organized or unorganized capacity, connected with the Minneapolis and Cedar Valley Railroad Company, nor can we infer such connection from the mere use of this word. But by reference to the provisions of the statute, it is quite apparent that the word was used appropriately, and has not the signification attributed to it by the plaintiffs. The act of 1862 provides for the organization of the defendants, or such other persons and their associates, or such other company as should comply with the provisions and claim the benefits of the act under the name of the Minneapolis, Faribault and Cedar Valley Railroad Company. The release on the part of the old company was not necessarily to precede such organization, hence the use of the word "*reorganize.*" In the title of the act there is nothing to substantiate the plaintiff's view. The plaintiff's counsel urges the argument that at the time of the passage of the act of 1862, the Legislature had not the power to create a new corporation, and having the power to revive the old, that therefore we must presume that it intended to act within the scope of its power, and merely to revive the old corporation. We will admit, (solely for the purpose of this discussion, for we have not considered the question at all,) that the Legislature had not the power to create a new corporation.

It does not admit of doubt but that it had the power to revive the old one.   It is true that when the language of a statute admits of two constructions, one of which would render the act void for repugnancy to the constitution, the other should be adopted, for the presumption always is in favor of the validity of an act of the Legislature.   But this presumption is to be entertained, and this rule of interpretation invoked, only in case of doubt as to the intention of the Legislature. Where the intention is apparent, there is no room for construction or interpretation, and it cannot be disregarded even for the purpose of sustaining the statute.

In this case, from a view of the whole act, we think the conclusion irresistible, that the Legislature did not intend thereby to revive the old corporation, or to re-grant to it its forfeited property and franchises, and so far as the decision of this case is concerned, that it is a question of no importance, whether the Legislature had, or had not, the power to create a new corporation.

The order appealed from is affirmed.